# THEODORE STEWART GREENBERG

June 13, 2005

<u>VIA CERTIFIED MAIL</u>

Mr. Robert E. Nelson
Senior Investigator
Office of the Chief Disciplinary Counsel
State Bar of Texas
1111 Fannin, Suite 1370
Houston, TX 77002

**United States District Court
Southern District of Texas
*Filed***

JUL 1 1 2005

**Michael N. Milby, Clerk**

CR 82-139

Re:  No. H00405199953

Dear Mr. Nelson:

      I write in response to the Office of Chief Disciplinary Counsel ("Disciplinary Counsel") inquiry referenced above and described in your letter of April 18, 2005. I appreciate very much your courtesy in providing me with an extension, until June 20, 2005, in which to provide the Disciplinary Counsel with an initial response in connection with its inquiry.

      Included with your April 18 letter are two State Bar of Texas Grievance Forms, completed by Edwin Wilson, one dated March 23, 2005, and the other dated March 28, 2005. The first grievance states that, "Prosecutor Greenberg with held [sic] critical exculpatory evidence from the Houston Trial that would have resulted in a not guilty decision." The second grievance similarly alleges that "the Prosecutor Mr. Theodore Greenberg with held [sic] and falsified exculpatory evidence in the Houston Trial." Both grievances refer to the October 27, 2003, opinion of Judge Lynn Hughes in the proceeding brought by Edwin Paul Wilson in the U.S. District Court for the Southern District of Texas. *United States v. Edwin Paul Wilson*, Opinion on Conviction, Ancillary Civ. Action H-97-831 (S.D. Tex. Oct. 27, 2003) (hereafter "Op. on Conviction"). In this proceeding, which was brought pursuant to 28 U.S.C. § 2255, Judge Hughes vacated Mr. Wilson's 1983 conviction for conspiracy to ship explosives to Libya, presenting a falsified shipper's export declaration, exporting explosives without a license, and transporting explosives by cargo aircraft. *See id.* at 1 & 7.

Please file & enter.
L·N·H
*USDJ*

Mr. Robert E. Nelson
June 13, 2005
Page 2

Judge Hughes writes that as a member of the team that prosecuted Mr. Wilson more than 22 years ago, I submitted into evidence a declaration signed by the executive director of the CIA, Charles A. Briggs (the "Briggs Declaration"), even though CIA attorneys asked that it "not be used as evidence, as then written." *See* Op. on Conviction at 15. It should be noted that Judge Hughes never directly states or finds that I knowingly submitted a false declaration – nor could he. I did not knowingly submit a false declaration in Mr. Wilson's prosecution, or any other case. I believed at the time that the Briggs Declaration was truthful, and understand that Mr. Briggs himself continues today to vouch for its accuracy. Moreover, at the time that we filed this declaration, no one – including CIA attorneys – had indicated to me that the declaration was inaccurate and I in fact fully believed it to be true and correct. If I had had reason to believe that the declaration was not truthful, I would not have permitted it to be introduced – period.

I respectfully submit to you that it is unfair to base any conclusions about me based on Judge Hughes' opinion. Judge Hughes issued his opinion in a proceeding to which I was not a party, in which I had no opportunity to participate and in which I was accorded no due process rights. As I understand it, Judge Hughes decided this matter almost exclusively on the papers, without the benefit of meaningful hearings or live testimony. He certainly did not have the benefit of hearing from me or, to my knowledge, other members of the team that prosecuted Mr. Wilson. In fact, I understand that the Department of Justice waived its right to adduce live testimony in the § 2255 proceeding. Moreover, I was not represented by counsel before the District Court, did not have any opportunity to participate in the proceeding and had no control over the United States's unfortunate election not to appeal Judge Hughes's decision or its decision not to retry Mr. Wilson. In short, I feel that I have been unfairly criticized in the opinion because the Department of Justice did not represent my interests in the proceeding and ineffectively represented the United States's own interests.

Although the issue before Judge Hughes was Mr. Wilson's conviction, the Judge also criticized me and harmed my reputation, *in absentia*, without hearing testimony from me. The two statements made in the opinion that relate to me are the following:

> CIA attorneys told Assistant U.S. Attorney Ted Greenberg that the Briggs declaration should not be used as evidence, as then written, and asked him not introduce it. He did.

Mr. Robert E. Nelson
June 13, 2005
Page 3

> CIA General Counsel Stanley Sporkin advised that, at a minimum, the word "indirectly" should be removed from paragraph four [of the declaration]. Deliberately, knowing the facts, Greenberg ignored the CIA attorneys' requests and used it.

Op. on Conviction at 15.

Significantly, no one claims to have told me that the declaration was false or inaccurate. Moreover, any implication that anyone made such a statement to me is simply untrue. The only citation offered by Judge Hughes in support of these statements is Exhibit 98 to Mr. Wilson's Motion to Vacate. This exhibit is an "Agreed Non-Classified Summary" of a classified "Memorandum of Recollection," that was prepared jointly by Mr. Wilson's counsel and the U.S. Department of Justice in connection with Mr. Wilson's challenge to his conviction.[1] This document purports to summarize certain points made in a memorandum that was signed by a CIA attorney referred to only as "David P." and by at least one other CIA attorney. The underlying memorandum is reportedly classified at the Secret level, and therefore I understand that it cannot be discussed or shared with Disciplinary Counsel absent appropriate clearances. I am thus in the position of having to defend myself against double hearsay – statements that the authors of the Summary attribute to the signers of the classified "Memorandum of Recollection" concerning what General Counsel Sporkin and certain CIA attorneys supposedly said to me about using the Briggs Declaration. This double hearsay is the only evidence cited by Judge Hughes in support of his inaccurate and inflammatory statements about me.

Why this incorrect "Memorandum of Recollection" was drafted, I cannot say. Despite the passage of time, I do recall that the prosecution team had originally intended to call as a witness a senior CIA employee who had been specially designated by Mr. Briggs to search the CIA's files. As Mr. Briggs himself described in his declaration:

---

[1] I did not have the opportunity to provide any input on the preparation of the Agreed Non-Classified Summary, or to validate, prior to its being submitted to the Court, whether this Summary accurately reflected the content of the underlying classified document. I note that, according to the Agreed Non-Classified Summary, it is the opinion of the United States that "additional facts in this document which are currently classified but disclosed to defense counsel are relevant to this matter."

Mr. Robert E. Nelson
June 13, 2005
Page 4

> On 8 November 1982, the Chief of the Information Management
> Staff, Directorate of Operations, was authorized by me to have access
> to all records of the CIA for the purpose of searching those records, as
> well as reviewing the results of any previously conducted searches, for
> material that in any way pertains to Mr. Edwin P. Wilson or the
> various allegations concerning his activities after 28 February 1971,
> when he resigned from the CIA.

Briggs Declaration ¶ 2.

This individual would have testified, among other things, that his search of the CIA's files uncovered no evidence of the CIA having authorized Mr. Wilson to ship explosives to Libya. At the CIA's insistence, we requested that this employee be permitted to testify under a pseudonym to protect his identity. When the trial court refused this request, the prosecution team and the CIA jointly decided to prepare a declaration instead. I recall that the members of the trial team and CIA attorneys discussed the tactical approach of using a declaration versus live testimony and whether such a "negative records declaration" would be admissible – and that I obtained the input of Deputy Assistant Attorney General Mark Richard regarding the use of the declaration.

The prosecution team ultimately decided to proceed via a declaration. In preparing this declaration, we received input from attorneys from the CIA. The declaration was signed by Mr. Briggs, and his signature was affirmed by Mr. Sporkin, both on the afternoon of February 3, 1983. The declaration was presented to Mr. Wilson's counsel shortly thereafter. The very next day, we introduced the declaration at trial. Mr. Wilson did not object to the accuracy of the declaration, did not attempt to call Mr. Briggs as a witness and cross-examine him, and in fact offered no sur-rebuttal of any sort. If Mr. Wilson had, in fact, had relevant contacts with the CIA, he certainly knew about them and presumably would have raised some sort of objection to the declaration. His utter failure to rebut the declaration during the course of the trial strongly supports the proposition that the declaration is truthful. Moreover, the timing of events rebuts any assertion that General Counsel Sporkin had concerns about the accuracy of the declaration. Mr. Sporkin affirmed Mr. Briggs's signature on the declaration the day before it was used. If Mr. Sporkin had had any doubts or reservations about the declaration, he undoubtedly would have withheld his signature until such concerns were cleared up.

Mr. Robert E. Nelson
June 13, 2005
Page 5

       In sum, I was never told by General Counsel Sporkin, nor anyone else at the CIA, not to introduce the declaration because it was untruthful in any respect. While Mr. Sporkin and other CIA attorneys may have stated to me that they had concerns about whether the declaration was admissible, or may have stated that a live witness was preferable, I had every reason to believe that the declaration was true and correct. The declaration had every indicia of reliability, inasmuch as it recounted a search of CIA records that was conducted by a senior CIA employee and which had been specially authorized by Executive Director Briggs, the Number 3 official at the CIA.[2] The declaration was signed under penalty of perjury by Mr. Briggs, and was attested to in front of a Notary Public by General Counsel Sporkin. Both men signed the document the day before we introduced it, a fact that its hard to reconcile with any assertion that Mr. Sporkin requested that I not utilize the declaration as written. In short, any contention that I knew or should have known that the declaration was false is simply wrong.

       My otherwise unblemished reputation, earned after 29 years of public service, has already been damaged by Judge Hughes's opinion.[3] A Disciplinary Counsel investigation would simply add insult to injury. In order to prepare my defense before the Disciplinary Counsel (a right that I was not accorded by Judge Hughes), I would have to review my own notes of the prosecution, confer with members of the prosecution team, review the Memorandum of Recollection, obtain testimony from the Memorandum's authors and inspect other documents and examine other witnesses that the authors claim corroborate their position.

       This would be a process that would, at a minimum, be immensely burdensome and cumbersome, and which to some degree would likely prove to be impossible. The Department of Justice has informed me that it cannot currently locate my trial notes or files and that it has no reasonable prospect of finding them. Moreover, in the absence of a waiver by the Department of Justice, I would be

---

[2]     I understand that shortly after Mr. Wilson's trial, Daniel Hedges, the U.S. Attorney for the Southern District of Texas, was informed by Deputy Assistant Attorney General Mark Richard that a member of the CIA staff had prepared a memorandum that stated that the CIA possessed documents that were inconsistent with the Briggs Declaration. Mr. Hedges reviewed this memorandum and the back-up documents and concluded that this assertion was erroneous, and that the Briggs Declaration was, in fact, accurate.

[3]     My CV is attached.

Mr. Robert E. Nelson
June 13, 2005
Page 6

prohibited from sharing with Disciplinary Counsel the deliberative process relating to Mr. Wilson's prosecution. Also, as noted above, the Memorandum of Recollection and most other key documents are classified and thus cannot be disclosed or discussed with Disciplinary Counsel absent appropriate clearances. And finally, the memories of the authors of the Memorandum and the other members of the prosecution team are now more than 22 years old and have undoubtedly faded with the passage of time. In fairness, I should not have to bear the burden of even defending myself under these circumstances.

Mr. Wilson is a dangerous man who, in addition to the Texas prosecution, was convicted in the U.S. District Court for the Eastern District of Virginia for transportation of firearms with intent to commit a felony and was convicted in the Southern District of New York for, among other things, attempted murder and conspiracy to commit murder, in connection with his attempt to put out a contract on the lives of his wife, witnesses against him, and the prosecutors working to bring him to justice. I was proud to be a member of the teams that prosecuted Mr. Wilson in these cases, and I categorically deny that I knowingly filed a false declaration or otherwise acted inappropriately in those cases or any other case. Unfortunately, my name is now being dragged through the mud, based on the intemperate statements of a federal judge, which are in turn based on a summary of a classified document that was introduced in a proceeding in which I had no opportunity to participate, regarding a prosecution that occurred more than 22 years ago.

In view of the foregoing, I respectfully urge the Disciplinary Counsel to close its inquiry and take no further action here. Should the Disciplinary Counsel wish, I would be pleased to provide the foregoing information in the form of a declaration or sworn affidavit.

Sincerely,

Theodore S. Greenberg

cc. Mr. Edwin Wilson